**E-FILED**
Tuesday, 31 January, 2006 09:57:36 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

---

| | | |
|---|---|---|
| **NICHOLAS RESTAINO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 04-2198** |
| | ) | |
| | ) | |
| **ILLINOIS STATE POLICE, LIEUTENANT MATTHEW ADAMSON, OFFICER WILLIAM BACKUS, and SERGEANT TRACY NOLTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**OPINION**

---

On April 9, 2004, Plaintiff Nicholas Restaino filed a complaint against Defendants Illinois State Police, Lieutenant Matthew Adamson, Officer William Backus, Sergeant Tracy Nolte, Dana Steele and the Momence Police Department. On August 30, 2004, Judge John W. Darrah transferred this case to the Urbana Division of the Central District of Illinois from the Northern District of Illinois. Defendants Dana Steele and the Momence Police Department have since been dismissed from this case, and the only remaining claim is a claim under 42 U.S.C. § 1983 for unreasonable search and seizure. On December 12, 2005, Defendant Nolte filed a Motion for Summary Judgment (#85). On December 14, 2005, Defendants Adamson, Backus, and the Illinois State Police also filed a Motion for Summary Judgment (#86). The matters are now fully briefed. For the reasons that follow, the Motions for Summary Judgment are GRANTED.

FACTS

Plaintiff Nicholas Restaino owned an auto body repair shop in Momence, Illinois. In his deposition, Restaino testified to a number of incidents involving Dana Steele beginning in December 2001. Dana's husband also owned a collision repair shop in Momence, Illinois. These incidents included a number of occasions where, according to Restaino, Dana gave him "the finger." After one such incident on April 9, 2002, Sergeant Tracy Nolte of the Momence Police Department came to Restaino's shop and said he had heard there had been a fight involving the Steeles.

On April 10, 2002, Dana Steele informed the Momence Department that she had been threatened by Restaino. Officer William Backus of the Illinois State Police spoke with Dana and her husband on April 11, 2002. The Steeles informed Officer Backus that Restaino followed customers of their collision repair business around Momence. The Steeles further alleged that Restaino had repeatedly driven past their home and acted in a threatening manner in their presence.

Dana provided Officer Backus with a copy of the statement she made the day before to the Momence Police Department. In the statement, Dana indicated Restaino had blocked her into her vehicle with his vehicle and made threatening statements to her. Dana also provided a copy of a verified complaint for restraining order against Restaino which had been filed in Will County by Restaino's former employer, Mike Caruso of Caruso Collision Center (CCC) on January 12, 2001. This complaint indicates Restaino put a gun to the head of an employee of CCC, harassed female employees, left a vulgar message at Caruso's home regarding Caruso's daughter, and pounded on the door and windows of the General Manager's home yelling obscenities. Caruso further indicated in the complaint that he believed Restaino had 30-35 guns at his house. The complaint does not

indicate which of these allegations were observed by Caruso.

Based upon the information received from the Steeles, Officer Backus inquired about having Restaino's Firearm Owner's Identification (FOID) card revoked. Lieutenant Matthew Adamson, also of the Illinois State Police, then drafted a letter to Lieutenant Rick Karhliker based upon the information which had been gathered regarding Restaino. Lieutenant Adamson indicated in the letter that he believed "Restaino poses a clear and present danger to society" and requested that his FOID card be immediately revoked. On April 11, 2002, Kirk Lonborn, Chief of the Firearms Services Bureau of the Illinois State Police, drafted a letter to Restaino informing him that his FOID card was being revoked. Restaino's FOID card was revoked pursuant to the provisions of 430 Ill. Comp. Stat. 65/8(f), which allows for the revocation or seizure of a FOID card for "any individual whose mental condition is of such a nature that it poses a clear and present danger to himself, any other person or persons, or the community." Therefore, Restaino was required to surrender the FOID card and could no longer possess or purchase firearms. Restaino was further informed of the procedures for appealing this decision.

At 8 a.m. on April 11, 2002, several law enforcement officers went to Ultimate Collision Center, Restaino's place of business, to inform him that his FOID card had been revoked. Sergeant Nolte arrived sometime thereafter. Officer Backus indicated he took the lead on this team. Upon arriving, Officer Backus asked Restaino the location of his FOID card. Restaino told one of the officers where the FOID card was and gave him permission to get it. Restaino also informed the officers that there was a weapon in the toolbox and gave them permission to retrieve it. One of the officers then retrieved the FOID card and the weapon from the toolbox. Restaino testified that Officer Backus threatened to arrest him if any more weapons were found because his FOID card had

been revoked. Restaino then asked the officers if they had a warrant. When the officers said they did not, Restaino asked them to leave. The officers informed Restaino they would not be leaving without his guns. Restaino then asked Officer Backus if he could call his attorney, and Restaino then made the call. Restaino's attorney, Frank Carey, told Restaino not to sign anything or consent to anything. Carey also spoke with Officer Backus on the phone.

Officers also found a box of .25 caliber ammunition in the toolbox and asked where the corresponding gun was located. After initially denying he knew where the gun was located, Restaino eventually told officers the gun might be located in the console of his truck. One of the officers then retrieved the gun from the truck. Restaino testified he did not give consent for the officers to remove the gun from his truck. Other officers proceeded to look through the shop while Officer Backus remained with Restaino. After the gun was obtained, Officer Backus asked Restaino to sign two forms labeled Consent to Search. One form was used for Restaino's vehicle and one was used for his home.

After signing the forms, officers asked Restaino if he had any guns in his home. Restaino replied that he did. Restaino then rode with officers to his home. Upon arriving, Restaino gave officers his keys and told them which one opened the garage door. Restaino further directed the officers to the vault in which he kept his guns and told the officers where to find the key to the vault. Officer Backus emptied the gun vault, but did not search other portions of the home. After the guns were removed, one of the officers informed Restaino that a serial number on one of the guns was defaced. As a result, Restaino was placed under arrest. Restaino testified that he only allowed the officers into his home because they told him if he did not they would "come in the middle of the night, kick down your door with your wife and kid at home, and we are not responsible for what

happens."

ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

Restaino brings this cause of action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by: (1) seeking the revocation of his FOID card; (2) entering his auto repair shop without a warrant; (3) searching his automobile for a gun; (4) searching his home; and (5) placing him under arrest. Restaino further alleges the Illinois State Police have a policy of inadequate training and supervision of police officers.

In their motions for summary judgment, Defendants raise the issue of qualified immunity. In determining whether qualified immunity will shield Defendants from suit, the court undertakes a two-part inquiry. Leaf v. Shelnutt, 400 F.3d 1070, 1080 (7th Cir. 2005). First, the court must determine if the facts alleged show that the officers' conduct violated a constitutional right, taking the facts in the light most favorable to the party asserting the injury. Leaf, 400 F.3d at 1080. If a constitutional violation is alleged, then the court must determine "'whether the right was clearly

established.'" Leaf, 400 F.3d at 1080, quoting Saucier v. Katz, 533 U.S. 194, 201 (2001). The relevant inquiry is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Leaf, 400 F.3d at 1080.

Restaino's first claim is that Lieutenant Adamson and Officer Backus violated his Fourth Amendment rights when he recommended that Restaino's FOID card be revoked. Illinois law provides that the state police have the authority to revoke and seize a FOID card previously issued if the person to whom the card is issued is a "person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community." 430 Ill. Comp. Stat. 65/8(f). Mental condition is defined as "a state of mind manifested by violent, suicidal, threatening, or assaultive behavior." 430 Ill. Comp. Stat. 65/8(f).

"The plaintiff bears the burden of establishing that a given right is clearly established , and to do so the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." Lunini v. Grayeb, 395 F.3d 761, 769 (7th Cir. 2005) (citation omitted). Restaino has cited no case law to indicate that: (1) he held a property interest in his FOID card or (2) that recommending a FOID card be revoked can rise to the level of a constitutional violation. Neither Officer Backus nor Lieutenant Adamson made the decision to revoke Restaino's FOID card, but merely recommended that the card be revoked. The recommendation was based, in part, upon information received from the Steeles. Dana had filed a police report indicating Restaino blocked her in her car by driving his truck up to the driver's side door of her car. Restaino then allegedly started yelling at her, telling her to bring her husband to his repair shop so Restaino "could take care of [Dana and her husband] both." The recommendation was also based upon the verified

complaint filed by Restaino's previous employer, which alleged, *inter alia*, Restaino put a gun to the head of a coworker and pounded on the door and windows of the General Manager's home yelling obscenities. Such allegations could certainly lead a reasonable officer to conclude Restaino exhibited a "a state of mind manifested by . . . threatening or assaultive behavior."

Restaino argues that Officer Backus and Lieutenant Adamson are not entitled to qualified immunity because they did not mention the credibility of the Steeles should be questioned because they owned a business which was in competition with Restaino's business. Restaino further argues Adamson and Backus did not have sufficient corroboration of the Steeles' allegations because the verified complaint filed by his former employer was thirteen months old. However, with regard to arrests, the Seventh Circuit has stated "police officers have no constitutional obligation to conduct any further investigation . . . if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause." Woods v. City of Chicago, 234 F.3d 979, 997 (7th Cir. 2000). "This is true even if sound police technique would have required such further investigation." Woods, 234 F.3d at 997. This court finds that a higher standard should not be imposed with regard to the revocation of a FOID card than that applied to grounds for arrest. Therefore, this court concludes Defendants Adamson and Backus are entitled to qualified immunity on Restaino's claim regarding the revocation of his FOID card.

Restaino also argues that the officers are not entitled to qualified immunity on his claims that the officers unlawfully: (1) entered his business; (2) searched his car; and (3) searched his home in violation of the Fourth Amendment. With regard to the entry into Restaino's place of business, it is well settled that there is no reasonable expectation of privacy in the public areas of facilities

during business hours. See Katz v. United States, 389 U.S. 347, 351 (1967).[1] Restaino admitted in his deposition that he permitted the officers to retrieve his FOID card and a weapon from his toolbox, the only non-public area of the garage which Restaino alleges the officers searched. Therefore, this court concludes Restaino has failed to allege a constitutional violation related to the entry of his garage.

Restaino has also failed to demonstrate the officers committed a constitutional violation when they entered his truck to retrieve a gun. "If a car is readily mobile and probable cause exists to believe that it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." Maryland v. Dyson, 527 U.S. 465 (1999); see also Ochana v. Flores, 347 F.3d 266, 271 (7th Cir. 2003). The officers had probable cause to search Restaino's truck based upon his admission that it contained a firearm and the fact that his FOID card had been revoked. See 430 Ill. Comp. Stat. 65/14(c)(1) (stating it is a class 3 felony under Illinois law to possess a firearm when a person's FOID card is revoked or subject to revocation under the circumstances presented in the instant case). Restaino has made no allegation that the truck was not readily mobile. Accordingly, the officers are entitled to qualified immunity on this claim as well.

The court next turns to Restaino's claim that officers violated his Fourth Amendment rights by conducting a search of his home for weapons. With regard to§1983 cases, the officers bear the burden of presenting evidence that Restaino consented to the entry of his home. However, if the evidence demonstrates consent was given, Restaino bears the burden of showing that either consent was not given or was given under duress or coercion. Valance v. Wisel, 110 F.3d 1269, 1279 (7th

[1] The court notes that Restaino has apparently abandoned this claim because he did not respond to the portion of Defendants' motions which address this issue.

Cir. 1997). Restaino signed a written consent for the search, and Restaino admits that he signed the document. Therefore, the officers have presented sufficient evidence that Restaino consented to the entry of his home. In an effort to demonstrate that this consent was given under duress, Restaino asserts the officers told him if he did not consent they would "come in the middle of the night, kick down your door with your wife and kid at home, and we are not responsible for what happens." Restaino also suggests that because his attorney advised him not to consent, the consent is invalid.

Whether consent is voluntary is based upon the totality of all the circumstances. United States v. Raibley, 243 F.3d 1069, 1075 (7th Cir. 2001). In assessing the totality of the circumstances, the court considers factors such as age, education and intelligence of the defendant, whether he was advised of his rights, how long he was detained prior to the consent, and whether authorities made repeated requests for consent, used physical coercion, or had already taken the defendant into custody. Raibley, 243 F.3d at 1076. However, in making a determination on the issue of qualified immunity, this court is not required to make a determination as a matter of law that the consent was voluntary. Rather, this court must determine whether reasonable police officers in the position of Defendants could have believed that their search of Restaino's home was constitutional in light of the consent that was obtained. Valance, 110 F.3d at 1280.

Initially, this court notes that Restaino has presented no case clearly establishing that consent to search would be deemed involuntary under the circumstances presented in the instant case. Furthermore, Restaino signed a written consent form which "weighs heavily toward finding his consent was valid." United States v. Taylor, 31 F.3d 459, 463 (7th Cir. 1994). The consent forms signed by Restaino indicated he had the right to refuse consent. Restaino provided the officers with a key to his garage door, showed the officers where the vault in which his guns were stored was

located, and provided the officers with the key to the vault. There is no indication that officers ever drew a weapon on Restaino, handcuffed him or took him into custody. Restaino was a high school graduate who operated his own automotive repair business. Officers allowed Restaino to call his attorney, allowed him to use the restroom, and allowed him to call his wife and child to inform them to leave before the police arrived at his home. Restaino even testified he asked the officers if he could drink beer while they were present at the shop, a request the officers granted. Based upon this undisputed evidence, this court concludes a reasonable officer could have concluded Restaino consented to the search of his home.

Defendants further seek summary judgment on the issue of whether they are entitled to qualified immunity with regard to the arrest of Restaino. Restaino was arrested because one of the guns which was found in his home had the serial number defaced. Possession of a firearm on which the serial number has been removed or obliterated is a class 3 felony under Illinois law. See 720 Ill. Comp. Stat. 5/24-5(b). Restaino presents no evidence to indicate the gun did not, in fact, have a serial number defaced. Restaino only asserts he was not able to observe the gun after his arrest. Accordingly, this court concludes that a reasonable officer could have believed there was probable cause to arrest Restaino.

Finally, this court concludes the Illinois State Police are entitled to summary judgment on Restaino's claim that it fails to adequately train its personnel. This court has already concluded that the officers are entitled to qualified immunity on all of Restaino's claims. In addition, Restaino has presented no evidence or provided any caselaw in support of his failure to train claim. Rather, Restaino simply asserts that the "severely inadequate investigation by Officer Backus and the approval of it by Lieutenant Adamson show that both men lacked proper training." This assertion

in insufficient to preclude summary judgment on this issue.

IT IS THEREFORE ORDERED:

(1) The Motion for Summary Judgment (#85) filed by Defendant Tracy Nolte is GRANTED.

(2) The Motion for Summary Judgment (#86) filed by Defendants Adamson, Backus, and the Illinois State Police is GRANTED.

(3) The final pretrial conference scheduled in this matter for February 24, 2006, and the jury trial scheduled to begin March 6, 2006, are VACATED.

(4) This case is terminated.

ENTERED this 31st day of January, 2006.

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF JUDGE